**Corning Glass Works, Appellant, v. Rose Adelman and Harry Adelman, Appellees.**

**Gen. No. 31,906.**

Opinion filed February 23, 1928.

JAMES J. McKENNA and WINSTON, STRAWN & SHAW, for appellant; JAMES J. McKENNA, HAROLD BEACOM and GEORGE T. EVANS, of counsel.

MICHAEL GESAS and MILLARD R. POWERS, for appellees.

MR. JUSTICE WILSON delivered the opinion of the court.

This action is based upon an appeal bond dated September 17, 1923, by which the defendants obligated themselves to pay a certain judgment for $10,195.70, recovered in the municipal court of Chicago on August 29, 1923, in which proceedings the Corning Glass Works was plaintiff and the Chicago Glass Products Company was defendant. The judgment was in favor of the plaintiff in the original cause, and the bond provided that in case the Chicago Glass Products Company prosecuted this appeal with effect and paid the amount of the judgment, costs, interests and damages rendered, and to be rendered, then the obligation was to be void, otherwise in full force and effect.

The judgment in favor of the Corning Glass Works was affirmed in this court, and writ of certiorari to the Supreme Court being denied, this judgment became final.

By reason of the action of the defendants, in injecting into the trial every conceivable ground for defeating the action, what would otherwise be a simple cause, became an involved one.

The statement of claim filed by the plaintiff acknowledged the receipt of $6,731.43, and the suit was for the balance due under the bond.

A trial was had before a jury and a verdict was rendered in favor of the defendants. Judgment was entered accordingly, and it is from this judgment that this appeal is perfected.

It is contended on behalf of appellant that the trial court committed error in that: (1) it refused to receive evidence offered by the plaintiff, that a certain alleged claim of the Chicago Glass Products Company was the same claim which had been offered in the original suit; (2) there was no consideration for the alleged verbal agreement to extend the time of payment of the judgment, and such agreement was therefore in-

valid and unenforceable; (3) it was reversible error, for the court to receive any evidence of the alleged verbal notices to proceed to collect the judgment; (4) the court made prejudicial remarks during the course of the trial, to the injury of the plaintiff; (5) counsel for defendants made many prejudicial remarks, and conducted himself in a manner prejudicial to a proper hearing of the cause; (6) the court admitted improper evidence concerning the alleged claim of the Chicago Glass Products Company against the Corning Glass Works; and (7) the court committed reversible error in giving certain instructions. As to the first of these propositions, evidence was permitted by the trial court to be entered on behalf of the defendants, over the objection of the plaintiff, for the purpose of showing that the Chicago Glass Products Company, defendant in the original suit, had lost certain profits through the failure of the Corning Glass Works to fill orders sent to it by the Chicago Glass Products Company. Plaintiff attempted to meet this testimony by introducing in evidence facts showing that said claim was fully set out in an affidavit of defense in the original cause of action, and this was refused by the trial court. We believe the trial court erred in the first place in permitting any such testimony to be introduced on behalf of the defendant; and that it erred a second time in denying plaintiff the right to rebut this by introduction of testimony showing that it had been part of the original litigation.

This cause was before this court on the original hearing and as it grows out of the same subject matter and is predicated upon a liability based upon said proceeding on appeal in this court, we are of the opinion that the records of this court became competent and will be considered in connection with this cause for the purpose of ascertaining the real facts in connection with this proceeding.

This court said in the case of *Dandridge v. Northern Trust Co.,* 218 Ill. App. 138, at page 140:

"Garnishment proceedings are statutory; and it is a condition precedent to garnishment that there shall be a judgment, issuance of an execution, and a return 'No property found.'

"Where it appears, as it does here, that the garnishment proceedings are part and parcel of the same cause as that in which the original judgment was obtained—the original and garnishment proceedings bear the same general number—and the trial court takes, as it should, judicial notice of all that has transpired in the cause, we are of the opinion that it then becomes unnecessary to have the judgment and execution and return offered in evidence, and thereafter, on appeal or writ of error, made a part of the bill of exceptions."

To the same effect see *Wallace v. Meldahl,* 202 Ill. App. 97; *People v. Powers,* 283 Ill. 438. We are of the opinion that this cause is so interrelated to the proceeding upon which this suit is predicated, in that it is an action to enforce an obligation on a bond given on the appeal from the original judgment, that this court has the right to and should search its own record for the purpose of discovering the truth as to whether or not an issue sought to be raised by the defendants, was, in fact, presented to this court on an appeal from the original judgment. We find in the record in said cause on appeal in this court, that the matters attempted to be introduced in evidence by the defendant below in this proceeding were contained in the affidavit of defense filed in the original cause, and therefore should have had no part in this proceeding. An offer to make this proof, which was set out fully in the offer of counsel for the plaintiff, was denied by the court; and we think not only that it was error to refuse said offer, but believe that we can correct the error in this court from the record now on file before this court, brought here on the hearing of the original judgment. Moreover,

the same facts are matters of record in the court wherein this cause was heard in the first instance.

Considerable space is given by counsel for appellee in his argument to the effect that a surety will be released from his obligation where a party undertakes to vary the terms of the suretyship agreement. This is a correct proposition of law, except that the change must be a material change and one which would affect the interests and rights of the surety. The cases cited in support of said rule are not in conflict with the view we hold in regard to that proposition, but it must be borne in mind that the present action is based upon an appeal bond, and the obligation on which has become certain and fixed. After the affirmance of the judgment in this court, and the denial of a writ of certiorari by the Supreme Court, the plaintiff had a right to compel payment of the judgment from the surety, as well as from the principal, when it appeared that the principal had failed to satisfy the judgment.

The Supreme Court of this State, in the case of *McCarthy v. Alphons Custodis Chimney Const. Co.,* 219 Ill. 616, in its opinion at pages 622, 623, says:

"The very object of the parties in executing the bond was to prevent the collection of the judgment, and have the case re-heard in the circuit court; and the bond was expressly conditioned for the payment of the judgment, in the event it should be affirmed. It was, therefore, a solemn admission by the defendant that there was such a judgment. He voluntarily entered into an engagement under his hand and seal for the payment of the judgment; and he could not afterwards deny what he thus deliberately asserted to be true—the existence of the judgment. The principle of estoppel is clearly applicable. * * *

"The bond was executed in order to enable the parties, who signed it, to take an appeal from the judgment to the Appellate Court. The bond recites that the appeal had been prayed for and obtained, and provides that the bond is void in case the appeal is

prosecuted with effect. Hence, the appellant in this suit upon the bond cannot be heard to say that no appeal was ever taken; nor can he be permitted to question the truth of the recitals of the bond. The bond in question is a voluntary contract. The expenses incurred by appellee in defending the appeal on the faith of the bond are a sufficient consideration for entering into it. (*Meserve v. Clark*, 115 Ill. 580; *George v. Bischoff*, 68 Ill. 236.)

"It is true that appellant is a mere surety upon the bond; but 'in an action on an appeal bond the obligors and sureties are estopped from setting up defenses that contradict the recitals therein.' (24 Am. & Eng. Ency. of Law, — 2d ed. — p. 67; *Arnott v. Friel, supra; Shaw v. Havekluft*, 21 Ill. 127)."

The distinction appears to be clear that the plaintiff in this cause was not compelled to proceed at any particular time, outside of the statute of limitations, against the principal, to collect, but, on the other hand, the obligors on the bond had a right of subrogation, and could have paid the judgment and collected from the principal. In other words, the right to collect became one to which the sureties on the bond were subrogated, and it was their duty to see that their interests were protected, if they cared to protect their interests, by the payment of the judgment and costs, and thereupon proceeding to collect for their own benefit.

The Supreme Court of Nevada, in the case of *Quillen v. Quigley*, 14 Nev. 215, in its opinion at page 217, says:

"The mere payment of a part of the amount of the judgment in monthly installments is not a binding legal consideration for the extension of time. There is no legal obligation varying the contract which previously existed between the creditor and the principal debtor. The sureties were not deprived of the right of subrogation. The proposed extension of time did not deprive the sureties of any right which existed at the time of the rendition of the judgment."

The court again, in its opinion at pages 219, 220, says:

"The plaintiff had not entered into any contract with the sureties on the appeal bond that he would take prompt measures to collect the judgment. The duty of such action rested with them. The law gave them ample protection. They could have paid the judgment at any time, which would have been no more than they had agreed to do, and could thereupon have sued the principal in their own names and proceeded to collect the amount of the judgment without any delay."

The case just cited was an action on an appeal bond, and the court distinguishes such actions from an ordinary action of suretyship.

It is argued at some length that the Chicago Glass Products Company had gone into bankruptcy after the obtaining of the judgment and that it was the duty of the plaintiff to present this judgment in that court for collection. Counsel in the case of *Sandusky v. Exchange Bank*, 81 Ill. 353, took the opposite view of this argument and presented forcibly to the Supreme Court of this State their reasons why the fact of presenting such a judgment in a bankruptcy proceeding was cause for releasing the obligors on the bond; whereas, in the case at bar, counsel insist that the plaintiff released the obligors on the bond by doing exactly the opposite thing. The court in its opinion at page 355, says:

"The presentation of the judgment, and its allowance in the bankrupt proceedings, was in no sense a judgment against the bankrupt, but if it was, that would not release the surety on the appeal bond. His liability arises upon the bond. No action was had or proceedings taken in the bankrupt court on the obligation signed by the security.

"It was but an act of good faith on the part of appellees to present the judgment against the estate of the bankrupt, and whatever amount could be realized could be applied in payment of the judgment, and thus far relieve the surety on his bond, but we are aware of no principle upon which it can be claimed that such a presentation of the claim would release the security."

For the reasons stated in that opinion, we are of the belief that the failure to present the judgment in the bankruptcy proceeding was not a cause for releasing the bond, because, as in that case, the obligation of the surety was fixed after the affirmance of the judgment. To the same effect is the case of *Villars v. Palmer*, 67 Ill. 204, where it was claimed by the obligor on a bond that the failure of the creditor to present the claim against the estate of the principal debtor after his death resulted in releasing the surety on the bond. The court in its opinion at pages 205, 206, says:

"The claim on the part of the surety in this case is, that, as by the neglect of the creditor to present his claim against the estate of Taylor, the principal, all remedy in respect to the debt has been lost against the estate of the principal, that should operate to discharge the surety.

"The complaint is of mere delay, not of any affirmative act on the part of the creditor, whereby the surety has been affected. But it is the well established principle, that mere delay on the part of the creditor to proceed against the principal does not discharge the responsibility of the surety.

"In cases of this sort there is not any duty of active diligence incumbent on the creditor. All that the surety has the right to require of the creditor, in the absence of any statute provision, is, that no affirmative act shall be done that will operate to his prejudice. It is his business to see that the principal pays.

"The law furnished the surety here with ample remedies for his protection. He might have paid the debt according to his undertaking, and have sued the principal himself; or he might have gone into a court of equity after the debt became due, and obtained a decree that the principal should pay it; or he might, under the statute, have given to the creditor written notice to put the note in suit, and thus have compelled him to sue the principal.

"If he has seen fit to lie by, and the neglect to proceed against the principal in his life time, or against his estate after his decease, has been the means of depriving the surety of his indemnity, he must abide by the loss, and cannot throw it upon the creditor."

It appears that, in the case at bar, an arrangement was entered into between the plaintiff corporation and the defendant to the original judgment, Chicago Glass Products Company, by which this company was permitted to pay on account so much from month to month. It is argued that this was an arrangement which was detrimental to the obligors on the bond, particularly in that 6 per cent interest was charged by the plaintiff to the original action, on the principal sum, while it was being so paid. The only testimony as to this item of interest appears in the testimony of a witness for the defendants, and there is no record of any such charge in the written exhibits. We are not impressed with the weight of this testimony, particularly as it was elicited by a leading question, which was incompetent and served only to suggest the answer to the witness, which was later given in response to a following question, after the court had sustained an objection to the original one. We are of the opinion that no injury resulted to defendants by reason of the attempted collection, but rather that it was for their interest and benefit. In other words, the obligors on the bond showed no interest in the collection of the account and the fulfilment of their obligation as surety, but that whatever was done, was done by the plaintiff and inured to the benefit of the defendants in this cause. We do not believe that there was anything involved in the transaction which would have prevented the levying of an execution at any time, as there was no consideration to support the agreement.

The giving of instruction 12, for the reasons hereinbefore stated in this opinion, which was to the effect that the jury had a right to consider whether the

defendants to the original cause of action had a good defense to the action of the plaintiff in that suit, was error.

During the course of the proceedings, a number of remarks were made by the court, which appear to have been prejudicial to the plaintiff. Objection was made on the part of the plaintiff to the introduction of certain letters, passing between counsel and client, on the ground that they were privileged communications and were not competent. We do not care to go into these questions and answers, except to say very briefly that the remarks of the court to the effect that he could not understand why they should refuse to show the letters and that he could not see why anything should be concealed, were at least prejudicial. Nor do we wish to go fully into the remarks of the court to the effect that the original plaintiff was a foreign corporation and that the defendants were citizens of this jurisdiction, nor any other remarks of the court, all of which were made in the presence of the jury, except to say that such remarks are not conducive to a fair trial, and are of benefit to neither party, and result only in continued litigation caused by reason of the error in making such comments.

We find that the bond upon which this action is predicated was in full force and effect at the time of the beginning of the suit; that there was no extension of time for payment, which resulted in material injury to the defendants; and that the failure to present the claim on the judgment, on behalf of the plaintiff, in the bankruptcy proceedings, did not release the surety.

For the reasons stated in this opinion, the judgment of the municipal court is reversed, and judgment is entered here, for the sum of $7,603.20, the amount due said plaintiff, including interest thereon, and the costs of this proceeding.

*Judgment reversed and judgment here.*

Taylor, P. J., and Holdom, J., concur.